Good morning, and may it please the court. I'd like to reserve three minutes for rebuttal, if I could, please. My name is Michael Brown, and I'm here today representing appellants. We're here today because the district court improperly dismissed all three of the appellant's claims below. This court should reverse as to all three of those rulings. Now, before I discuss the district court's errors, I'd like to briefly address the county's argument regarding waiver. The county says that appellants waived their argument that they had a constitutional, a contractual right to the retiree premium subsidy. But the county conceded in its answering brief that this very argument has been fully explored during the REOC appeal. At page 22 of the answering brief, the county says, quote, the merits of the subsidy claim have been fully briefed in REOC, end quote. In fact, to call this issue fully briefed is an understatement. No fewer than 13 briefs were submitted during the REOC appeal on this very issue. The county itself filed 150 pages of briefing on this issue during the REOC appeal. In addition to all this briefing, the parties were here last year before this court in an extended oral argument on this exact issue. And just last week, the parties were in the California Supreme Court arguing this same exact issue for over an hour. Now, these briefs and these arguments are on the identical issue that's at stake in this waiver argument. They arise under the identical facts. They relate to the identical contracting parties, the identical history, and the identical defendant in appellee. If ever there was an argument that's been fully explored, it's this one. Because this issue has been fully explored, the county has suffered no prejudice by its omission from the opening brief, and waivers should not apply. Would leave to amend allow the retirees to cure the fare to plead a contractual claim? I believe retirees have pled a contractual claim. If Your Honor is talking about the district court's ruling that on the retiree medical grant, it's a separate benefit, the district court ruled that we failed to state a claim, it's not entirely clear what the reasoning was. The district court says that employment compensation terms in the public sector must be set forth expressly in contracts or statutes and must be approved expressly by the Board of Supervisors. But we clearly allege both those things in our First Amendment complaint. In fact, the county concedes that these contracts were approved by the Board of Supervisors. The waiver alleged is that you didn't brief it in your opening brief. I'm sorry, I think I'm confusing then the two issues. The waiver argument is with regard to the benefit called the retiree premium subsidy. And I don't believe that we need, certainly I guess if we were to go back and start over again, we would argue or at least mention that argument in our opening brief. But I think the exception to the waiver doctrine clearly applies here. When there's no prejudice, there's no reason to apply waiver. The district court's first error that we'd like to challenge is its ruling that the retiree premium subsidy is claim precluded. One of the most sacred rights in our judicial system is the right of every individual to have his or her own day in court. Here in a paltry three-sentence analysis, the district judge held that the REAC lawsuit barred thousands of retirees from ever having their day in court with regard to their individual damages claims. So you concede it with respect to injunction and declaratory judgment. The only issue is whether it is precluded as to damages. Correct. Technically, I'm not certain that an associational lawsuit would be preclusive as to the underlying subsidy claims either if it wasn't conducted as a class action. Practically speaking, we have no other arguments on that. We left it all on the field, so to speak, in the REAC case. So I don't think there's any difference with regard to the substantive legal right. The difference is that damages were unavailable in the REAC lawsuit, and these thousands of retirees have a right to have a day in court with regard to their damages right. We cited a number of authorities for this proposition. We cited Anderson v. Waddell, which says that as a matter of law, associations are not entitled to seek damages on behalf of their members, and therefore they cannot preclude individual members from bringing their own lawsuits. Now, Anderson appears to be the only case directly on point. The county has never even addressed that case, and the district court's order simply ignores it. We cited Heiser v. Franklin for the proposition that a class action lawsuit for declaratory and injunctive relief cannot preclude a subsequent claim for individual damages. The county did nothing to distinguish Heiser, and again, the district court order simply ignores it. Third, the district court expressly declined in 2008 to treat the REAC lawsuit as a class action, and therefore it afforded appellants, the individual retirees, no due process rights, none of the rights that are enshrined in Rule 23. There was no notice to absent parties. There was no determination that REAC was an adequate representative, and there was no determination of commonality or typicality in the REAC lawsuit. Now, by treating the REAC lawsuit as if it had been a class action, the district court was doing exactly what the Supreme Court has said courts should not do. It was applying what the Supreme Court has derisively described as the de facto or common law doctrine of non-party preclusion. Well, depending on what the California Supreme Court does, isn't it possible that your claim will evaporate because of an interpretation about whether there is, in fact, a contractual claim here? As to this benefit, that's true. So this preclusion argument may be an academic argument, depending on how the California Supreme Court does that. Yes, we'll hear from them by the end of the year under the Supreme Court's procedures. So should this court write on this subject, or just wait and see what happens? It would be fine to wait and see what happens. I mean, I think the district court's finding here, its order here, is plainly contrary to law, completely unsupported. But it won't matter if the California Supreme Court rules against us. So would the appropriate course here be to demand with instructions to stay this matter until the question is certified? That's what we asked for with Judge Guilford. We said all along there was nothing to do on this claim besides wait. And that is what we would ask for here. The district court also dismissed the retiree medical grant claim, a separate benefit that the county revoked in 2008. And I think I've covered this already. The district court says that we did not allege a contract right, or maybe it said we didn't allege vesting. But we clearly did allege both of those things. A contract can be alleged by simply alleging its legal effect. You don't need to attach the contract. You don't need to quote from the contract to survive a motion to dismiss. You need to plead the contract in its legal effect. That's what we've done. And the documents that we rely on, the contract documents, have been expressly approved by the Board of Supervisors. The county has acknowledged that. I think even today the county will be forced to acknowledge again that those contracts were duly adopted by the Board of Supervisors. But just for a specific period of time. Correct. The contracts were adopted serially, every two years. But our argument, and what we've alleged, is that if you retire during one of those contracts, your rights vest at that time. And so your right to a retiree medical benefit does not depend on what a union does 10 or 15 years down the road. That's our allegation. And the county has taken the opposite position. But I don't think this is the proper time in this lawsuit to answer that question. It hasn't really been fully briefed below. It wasn't briefed very much at all below. But that is the county's argument. It's all right to think about it. Of course. Yeah, of course. And there are several reasons why benefits such as this should vest. I mean, for one thing, in the city of Glendale, the Supreme Court of California said these contracts, MOUs, are to be interpreted as contracts, not as statutes. And when you interpret a contract, you look at the party's intent. That's the whole goal. Not only the language of the MOUs, but the party's course of dealing over the years will all go to the question of whether this benefit was intended to vest. So, again, it's probably not on a 12C motion. It's not the appropriate time to delve into extrinsic evidence and that sort of thing. But, yes, that is going to be ultimately the question. What are the – taking, if you can, a typical retiree, how much more is that person being charged? For the retiree premium subsidy, the first benefit that we are challenging the removal of, it's probably – it's over $300 a month difference. It depends on the retiree, but it's probably over $300 a month, $400 a month probably by now. It's more every year because now we have a retiree-only pool, and that pool ages and it gets more and more sick, and healthier people are driven out of that pool as the premiums go up. In effect, that pool is in something of a death spiral, so the damage gets worse every year. On the grant benefit, I believe the difference is about $200 a month. So, combined, we're talking about $7,000, $8,000, $9,000 a year per retiree. And this has been going on now for four years, so that's accumulating to this point. But if a retiree – how about this provision that when you go on Social Security, what the benefits – what are they? Well, with regard to the subsidy, the premium subsidy, because of the pooled rates, that benefit more or less vanishes, except for those retirees. Actually, there are a number of retirees who aren't eligible for Medicare because of a quirk in the history of counties and the Medicare system. There are some people who were employed at a time when the county didn't participate in Medicare, and so there are some people who will spend their whole lives without Medicare, and so this is the only benefit they will have. For the others, when Medicare kicks in, the subsidy more or less disappears. So we're talking about 55- to 65-year-old retirees mostly, but there are a fairly large number, I think maybe 200, as many as 200, that will never get Medicare. And so this is their health care for the rest of their lives. Well, if a retiree, say they retire, what ages have they been retiring at? Fifty-five, I guess sometimes earlier. I'm not entirely sure. But they go out and get other jobs. Well, at 55, that's possible to get another job. I think it's difficult these days for 25-year-olds to get jobs, and it's probably more difficult for 55-year-olds. Let's assume they get another job. Okay. And they're working when they're 65, and they have insurance coverage. Is the insurance coverage, the private insurance coverage, is that primary or secondary? You know, I don't know, Your Honor. I don't know. I believe to receive the retiree medical grant, you have to be enrolled in either a county-sponsored health plan or Medicare. So I think you would lose that benefit if you were to obtain private insurance. No, no, I'm talking about the insurance they obtain through the county. I'm afraid I don't understand the question. I'm sorry. Okay. You have insurance, say, through the county through Blue Cross. Yes. And then you're 65, so you're entitled to Medicare. Right. They may lower it. Now, my understanding is that if you're still employed, the Blue Cross is primary. The Medicare is secondary. That sounds correct to me, but I have to say I don't know. I don't know for certain. Well, I know because I'm in that. Okay. And something you might want to look at. If I could very briefly touch on the age discrimination claim. The district court ruled that the single filing rule requires the administrative charge to expressly state that it's brought on behalf of a class. This ruling is contrary to the law of every federal circuit that has addressed the question. The 3rd, 4th, 5th, 7th, 8th, and 11th circuits have all rejected this express statement. Do we have any cases from the 9th Circuit or the California Supreme Court? Not of the California Supreme Court, not of the 9th Circuit, because we think ENDA doesn't say anything about what a charge is supposed to say. So we would be extending the single filing rule if we were to so rule. You would have to be saying that California would adopt that rule, and I think there's every indication it would. And you would have to say which single filing rule standard California would adopt. And I think if every federal circuit is adopting one standard, every district court in the 9th Circuit has adopted that standard, which is basically a notice standard. I can't imagine the California Supreme Court would survey that landscape and decide to adopt something totally different. But this court is required to make its best judgment as to what the Supreme Court would do. Well, let me ask you this. Is there a potential claim under Title VII? For gender discrimination? Age discrimination or gender discrimination? Well, for various reasons, there would have been. But FEHA was for timing reasons, and the statute's limitations are different for the two statutory schemes. So the Title VII statute had run. The period for filing had run. The FEHA one had not. And so there would be. The Erie case basically says that there is a claim for retiree benefits discrimination against retirees. That's the 3rd Circuit case. And so there would be in federal court, and I think the Supreme Court of California would follow that guidance. Are you aware of the Manhart case? Is that the pension case discriminating against women for pension payouts? Is that Manhart? Well, that was a case against the Department of Labor and Poverty. It involved charging women for life insurance higher premiums than for men. Right. And I think in that case, the point was that that discrimination was based on a true stereotype, I believe. I thought the point there was that women lived longer. See, I might be mixing up cases. And it might be true that women live longer, but I think the court said truth is not a defense to intentional discrimination. Congress has banned certain categories from taking part in the government's decision. And so if I'm remembering Manhart correct, I think that supports our case here. I love that case because one of the few times it's been affirmed by the Supreme Court. Congratulations. It looks like I've used more than my time. That's all right. Good morning. May it please the Court. My name is Jennifer Knoth, and I'm here representing the County of Orange. This lawsuit is the third lawsuit where Orange County retirees are claiming some type of entitlement regarding retiree health premiums and where there's no statutory or other legislative source for such a claim of entitlement. The claim, we're here for a judgment on the pleadings and a decision granting judgment on the pleadings. So the pleadings in this lawsuit have six causes of action, and the plaintiffs divide them up in between the subsidy premium that they were just referring to and the grant premium. So you're saying that they can be cut off at any time? Well, this claim is not about actually. No one was cut off at any time or anything. Would that be the bottom line? Well, the bottom line, it depends on what the County Board of Supervisors decides to do. If they decide to eliminate all medical coverage for retirees, then it's okay. If the Board of Supervisors has not explicitly provided retirees with such a right, then they can do something different in the future. A Board of Supervisors can't bind future Boards of Supervisors to doing something without explicitly saying that's what they're binding them to do. This case is about the contract clause under the Constitution and the due process clause under the Constitution. In order to violate any of those rights, you need to have a right, first of all, and that right has to be explicitly stated in Board legislation or a statute, both under the due process and under the contract clause. Well, how about the implied covenant of good faith and fair dealing? Does that come in here? It cannot come in here under the contract clause analysis or a due process analysis because, again, you have to have, under due process, explicit mutual understandings from an independent source. Explicit is the opposite of implied. Under the contract clause, the plaintiff has a heavy burden, this is from the Supreme Court in Ninth Circuit cases, to overcome a presumption that the legislative body does not intend to bind itself. So before you find a legislative body has bound itself, the courts need to look at the particular legislation where it has explicitly done so. And in this court, the San Diego Peace Officer Association versus San Diego Retirement System, Robertson v. Kulongoski, they both say that. And in the district court with a very similar case, the Sonoma County Association of Retired Employees, it's a very similar case because Judge Wilkin actually looked at MOUs that were submitted, MOUs meaning Memoranda of Understanding, resolutions that were submitted. They talked about providing a particular retiree health benefit, but they didn't explicitly state that the benefit would be provided in perpetuity. Looking at what the, now I'm talking about the grant, actually, and I'll go back to the waiver argument that the appellant started with, but looking at the grant and the MOUs there, there is nothing alleged in the complaint other than the legal conclusion that there was a contract. There is nothing alleged in the complaint showing explicit provision that these grant benefits would be provided in perpetuity. Let me just ask a question. The Retired Employees Association of Orange County did not sue for damages. Do you contend that it could have? Right, yes. How could it have? When we were back in the first place, the Retired Employees Association of Orange County, in the middle of that case, the county received over 500 tort claims for damages. So the county said we would like one vehicle to decide this issue. We would like some finality in knowing how we are going to administer our retiree health program. So we asked the other side to convert it into a class action. They said no. We filed a motion to make it a mandatory class action so we could include all these tort claims, all of the retiree claims into one vehicle. They opposed it. Mr. Harris, who is one of the representative plaintiffs in this case, filed a declaration opposing class certification in that case. And then six months later, five months later, this case, this class action was filed by Mr. Harris seeking monetary damages and the identical same causes of actions for the subsidy in the first case. Couldn't they only sue for declaratory relief? Well, if they had done the mandatory class action, and I think I have two responses to your question. If they had turned it into a mandatory class action, we could have worked out that Mr. Harris could have been a plaintiff. What they seek by declaratory relief in that action is compensation for the lost benefits. Under the theory that if you take away a vested right, it has to be compensated. In this case, they only seek lost benefits. They don't seek the $50,000 in emotional distress that the tort claims were dealing with that we wanted to combine in the first case. So the claims for relief are very similar. And they could have tried it. And if you recall in this circuit, Feminist Women's Health Center had a similar claim where in the first case they filed a state court claim for injunctive relief against people who were setting fire and vandalizing and harassing this health center because it provided abortion services, or tried to, and they burnt down the center. So the Feminist Women's Health Center sued. They won. They got injunctive and declaratory relief. And then at the time, they did not think that they could file a RICO action for many damages in state court, so they didn't file a RICO claim for many damages in state court. After judgment was entered in their favor, the Supreme Court decided that they could have. But during the whole litigation, they didn't think that they could, and there was no authority telling them that they could. So they filed in federal court under RICO for monetary damages, and the Ninth Circuit said you should have tried it. You know, you could have tried it. It was an open question. You should have tried it and challenged it all the way up to the Supreme Court if you could have. But that's the same party. You're attempting to bind people, some of whom are members of REAC, as to what REAC chose to do when REAC could not bring a damage action. I mean, the law is pretty clear on that, and the court below held that. I'd like to know exactly what it is you're arguing is precluded here. Well, in the district court, we argued everything is precluded because it all arose out of the same transactional nucleus of facts. It all arose out of the same board action with the restructuring. The district court found that the identical actions, and what Mr. Brown was saying, the identical claims, everything identical was argued last week in the California Supreme Court and in this court a year ago in the first action. That's what the district court found. And just looking at that subset, if you don't find waiver, because it was not argued at all in this case by appellants, in that case there's no authority that says you have to apply that in looking at claim preclusion and you look at the type of relief that's sought. In the case of the issue of liability, when you talk about the actual legal right and the operative facts, they had their day in court. They had a full and fair opportunity to litigate it. In this case, they've offered nothing in addition. They said there's nothing in addition for us to offer here on this claim. Let me ask a direct question. If REAC wins before the California Supreme Court, are you claiming that these plaintiffs in this case cannot sue for damages? Yes. On what legal theory? Again, because they could have done it in the first case. Well, who's they? It's a different plaintiff. The retired employees. When they brought the action, the complaint in the first case said, we are bringing this claim on behalf of county retirees. They didn't distinguish in their complaint between REAC members. If they win in the first case, I imagine that they are not going to say, our victory applies only to our members and the other retirees do not get any of the victory in that behalf, which is sort of gospel missions. But in this case, it was certified as a Rule 23b-2 class action, which means the monetary damages in this case, because they're for lost benefits, are incidental or secondary to the main relief sought, which is injunctive and declaratory relief. If the first case was a class action, was certified as a class action, it would also be under Rule 23b-2 because it was brought in the same court by the same judge. There's nothing prohibiting the same judge, because it was brought in the same court, from providing a remedy that deals with benefits that may have been lost as a result of any unlawful action. If I may get back to the waiver question, the whole issue of the merits of the first five causes of action as they relate to the subsidy were not argued, were not put before this court by appellants. The district court had two alternate theories for dismissing the first five causes of action as they dealt with the subsidy claim. The one was claim preclusion, which we're talking about, and the other one was the merits, which is the same reason that he applied to the grant and that he applied in his decision in REAC. And on appeal, the appellants did not raise this alternate ground. So because they had an obligation to raise it on appeal, they waived that. Going to the issue of the age situation, the age claim, the plaintiffs brought an FEHA claim. They didn't bring an ADEA claim, which is the federal law prohibiting age discrimination. And under the FEHA, before coming to court, you have to exhaust your statutory administrative remedies. In California, there are no cases applying the single-claim role. There's no authority even to apply in death to a state claim under the FEHA. Rojo v. Cliger is the Supreme Court case that will tell you that under a statutory cause of action, you have to exhaust your administrative remedies. There's a way to bring a representative claim, but that's not what happened in this case. Well, you rely on the INDA v. United Airlines to argue against the single-filing rule. Isn't that case distinguishable? There are individual plaintiffs in that action attempted to rely on the administrative complaints of other plaintiffs when all of the individuals were bringing separate actions. Isn't it true here the employees are bringing one action? And such that Mr. McConnell's complaint, the DEFEH put the agency on notice of the alleged discrimination against all or most of the Orange County retirees. Well, in the claim, and again going back to when, at this time, the county, by receiving this one claim, and the claim does not say it's on behalf of a class, it's on behalf of anyone else, the other representative plaintiffs didn't file a claim. Meanwhile, we had over 500 tort claims, and we just had this one FEHA claim. There was nothing in there indicating, they hadn't raised it in the RIAT case, there was nothing in there giving notice to the county that we were going to have a class claim for age discrimination. I think that the rule of INDA and the rule that's quoted, that if you don't say you are, if you do not bring your claim on behalf of anyone but yourself, you cannot bring it, a lawsuit on behalf of anyone but yourself. And the rationale is we had no, the county had no notice that this was going to be a class claim. And there's very good reason for that, and neither did the FEHA have any notice, plus they immediately went to the right to sue, so that defeated the notice to the agency issue anyway. But there was really no notice that this would be a class claim until it was filed as such in the lawsuit, and that defeats the whole remedial measures of the Act. And I don't know that this, because this is an FEHA claim and not an ADEA or Title VII claim, I don't know that this case is the vehicle for the Ninth Circuit to overrule INDA, which I think INDA has pretty good rationale for providing notice. We haven't really talked about the due process claims either for the grant or, well, for the grant, because the due process and contract clause only apply to the grant. The age claim only applies to the subsidy, and that's why we argued in the first claim they should have brought everything that they had to bring about the subsidy. The case on point, I think, that closely mirrors this case, is Doyle v. Medford, where the Ninth Circuit held that because there was some at least functional discretion, you couldn't find a property interest when under a statute and a resolution that said retirees should get health benefits by the city. And so I think that's similar to this case, where there was, again, nothing explicitly providing that the retirees can get the benefits that they claim under the grant in this case, because, again, there's nothing that, you know, the MOUs expire under their own terms. There's nothing that prohibits the Board of Supervisors from changing the terms of the grant plan. If you don't have any questions, I think my time is up. Thank you. Okay, thank you. Just a few quick things. I'll just reiterate that ENDA doesn't say what the county says it says. If you read ENDA carefully, it simply says that a plaintiff may file an administrative charge and then go on to represent a class. That's what Mr. McConnell did here. And ENDA says that if you want to piggyback on someone else's filing, that person has to be someone who has gone on to file the class action. You can't piggyback on the single filing of somebody who never went on to file on behalf of a class. Mr. McConnell did exactly what the ENDA case says he should have done. And even if you were to adopt the strained and it's universally discredited reading of ENDA, you would have to say the California Supreme Court would look at every other circuit and every district court in this circuit and say we're going to follow the Ninth Circuit's 1973 opinion that has never been applied the way the county asked for it to be applied. The county has over and over admitted that REAC could not seek damages. It moved to dismiss the REAC complaint on the basis that it couldn't seek damages. So for the county now to come in and say that REAC could have sought damages, it's outrageous. The county said that. The district court said that. REAC admitted it. And from the very outset, REAC told the court and its members that it was only suing for declaratory relief and injunctive relief. The SCARE case, Judge Wilkins' opinion, it's unpublished opinion and it's entirely distinguishable. In that case, the retirees were not relying on express promises in the MOUs. Judge Wilkins even says that in her opinion. These retirees are not making a claim under the MOUs. In this case, we are making a claim under express promises in the MOUs. The Feminist Health Center case, I believe that was covered by Your Honor, that was a case about the same claim. The same claim requirement of claim preclusion can be satisfied even if remedies are different in case one. In case two, the same party analysis is entirely different. And one more thing, the Doyle case. The Doyle case is about when a statute can create a contract right. This case is about when a contract can create a contract right. And Doyle is about when you have a property interest against the government. There can be no greater property interest against the government than a contract, what the Supreme Court has called a binding bilateral contract between the county and its employees. And finally, the San Diego Peace Officers Association case. In that case, the Ninth Circuit actually looked at the extrinsic bargaining history to decide whether the benefit was vested. That case was not about retirees' benefits, by the way. The county or the city had left retirees alone. They were changing retirement health benefits prospectively only, which is not what the county did here. The county here took the benefits away from current retirees. And the Doyle court looked at extrinsic evidence to decide if it was vested or not. If there are no other questions, I think I can close. Thank you very much. Thank you. The matter is submitted. And we'll come to the final item on the calendar today, Mosier v. Encore Capital Group.
judges: Lynn, Pregerson, Nelson